UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - X
J. ANDREW RAHL, JR., AS TRUSTEE OF THE  :
FLAG LITIGATION TRUST,

                          :    04 Civ. 1019 (WCC)

               Plaintiff,

                          :

       - against -                    **OPINION**

                          :    **<u>AND ORDER</u>**

ANDRES BANDE, EDWARD McCORMACK, LARRY
BAUTISTA, DANIEL C. PETRI, ADNAN OMAR,   :
THOMAS BARTLETT, ALFRED GIAMMARINO,
DAVID RIFFELMACHER, DALLAH ALBARAKA      :
HOLDING COMPANY, VERIZON COMMUNICATIONS,
INC., QWEST COMMUNICATIONS INTERNATIONAL,:
INC., ANDERSEN WORLDWIDE S.C., ARTHUR
ANDERSEN BERMUDA and ARTHUR ANDERSEN &   :
CO. n/k/a ARTHUR ANDERSEN LLP,

                          :

             Defendants.
- - - - - - - - - - - - - - - - - - - - X

**A P P E A R A N C E S :**

                         ABBEY GARDY, LLP
                         212 East 39th Street
                         New York, New York  10016

JUDITH L. SPANIER, ESQ.
STEPHANIE AMIN-GIWNER, ESQ.          - and -

       Of Counsel

                         GRANT & EISENHOFER, P.A.
                         445 Park Avenue, 9th Floor
                         New York, NY 10022

JAY W. EISENHOFER, ESQ.

       Of Counsel                     - and -

                         GRANT & EISENHOFER, P.A.
                         1201 Market Street, Suite 2100
                         Wilmington, Delaware 19801

GEOFFREY C. JARVIS, ESQ.
RUSSELL D. PAUL, ESQ.

       Of Counsel                     **Attorneys for Plaintiff**

**A P P E A R A N C E S :** **(continued)**

                                    SHEARMAN & STERLING
                                    **Attorneys for Defendants**
                                    **  Thomas Bartlett, Larry Bautista,**
                                    **  Alfred Giammarino, Edward**
                                    **  McCormack, Daniel C. Petri and**
                                    **  David Riffelmacher**
                                    599 Lexington Avenue
                                    New York, New York  10022

JEROME S. FORTINSKY, ESQ.
TAMMY P. BIEBER, ESQ.
MICHAEL T. RASNICK, ESQ.
PANAGIOTIS KATSAMBAS, ESQ.

        Of Counsel

                                    KIRKLAND & ELLIS LLP
                                    655 15th Street, N.W.
                                    Washington, D.C.  20005-5793

THOMAS D. YANNUCCI, P.C.
JAMES P. GILLESPIE, ESQ.
CRAIG S. PRIMIS, ESQ.
MATTHEW E. PAPEZ, ESQ.                    - and -
JOHN C. O'QUINN, ESQ.

        Of Counsel

                                    KIRKLAND & ELLIS LLP
                                    153 East 53 Street
                                    New York, New York  10022

MATTHEW O. SOLUM, ESQ.

        Of Counsel             **Attorneys for Defendant**
                                    **  Verizon Communications, Inc.**

                                    O'MELVENY & MYERS LLP
                                    Times Square Tower
                                    Seven Times Square
                                    New York, New York  10036

BARRY H. GOLDSTEIN, ESQ.

        Of Counsel                    - and -

**A P P E A R A N C E S :** **(continued)**

                                        O'MELVENY & MYERS LLP
                                        400 South Hope Street
                                        Los Angeles, CA 90071

MATTHEW W. CLOSE, ESQ.

         Of Counsel                     **Attorneys for Defendant**
                                        **Qwest Communications**
                                        **International, Inc.**


                                        ARNOLD & PORTER LLP
                                        399 Park Avenue
                                        New York, New York  10022-4690

KENT YALOWITZ, ESQ.
JONATHAN N. FRANCIS, ESQ.
AARON R. KAALBERG, ESQ.                      - and -

         Of Counsel


                                        ARNOLD & PORTER LLP
                                        555 Twelfth Street, N.W.
                                        Washington, D.C.  20004-1202

SCOTT B. SCHREIBER, ESQ.
JOHN A. FREEDMAN, ESQ.

         Of Counsel                     **Attorneys for Defendant**
                                        **Andersen Worldwide S.C., Arthur**
                                        **Andersen Bermuda and Arthur**
                                        **Andersen & Co. n/k/a Arthur**
                                        **Andersen LLP**

**CONNER, Senior D.J.:**

Plaintiff J. Andrew Rahl, Jr. ("Rahl" or the "Trustee"), as Trustee of the Flag Litigation Trust (the "Litigation Trust" or "plaintiff"), filed this action in the Supreme Court of New York State, New York County, against Andres B. Bande, Edward McCormack, Larry Bautista, Daniel C. Petri, Adnan Omar, Thomas Bartlett, Alfred Giammarino, David Riffelmacher (collectively, the "individual defendants"), Dallah Albaraka Holding Company ("Dallah"), Verizon Communications, Inc. ("Verizon"), Qwest Communications International, Inc. ("Qwest"), and Andersen Worldwide S.C., Arthur Andersen Bermuda and Arthur Andersen & Co. n/k/a Arthur Andersen LLP (collectively, "Andersen").[1] Defendants removed the action to this Court asserting jurisdiction under 28 U.S.C. §§ 1334(b), 1367, 1331 and identified the matter as related to[2] *In re Flag Telecom Holdings Ltd. Sec. Litig.*, No. 02 Civ. 3400 (WCC) (the "Flag Securities Litigation"), which is currently pending before this Court. Plaintiff moved to remand the action to state court, contending that this Court lacks subject matter jurisdiction; however, in an Opinion and Order dated July 28, 2004 (the "7/28/04 Order"), plaintiff's motion to remand was denied. *Rahl v. Bande*, 316 B.R. 127 (S.D.N.Y. 2004) (Conner, J.). In addition, in the 7/28/04 Order we accepted this matter as related to the Flag Securities Litigation.

In the present motion, defendants Bartlett, Bautista, Giammarino, McCormack, Petri and Riffelmacher (collectively, the "D&O defendants"), Verizon, Qwest and Andersen move to dismiss the action in its entirety. For the foregoing reasons, we grant the motions of Verizon, Qwest and Andersen to dismiss the claims against them. The D&O defendants' motion to dismiss is granted

---

[1] All defendants are referred to collectively as the "defendants."

[2] *See* Local Civil Rule 1.6.

1

in part and denied in part.

# BACKGROUND

Unless otherwise noted, the following factual allegations appear in plaintiff's Complaint.[3] Flag Telecom Holdings Ltd. ("Flag" or the "debtor"), a company organized under the laws of Bermuda, was created in 1999 to serve as the holding company for several entities originally established by Verizon and other investors that operated in the international telecommunications market. (Complt. ¶¶ 2, 3.) Flag purused an aggressive expansion program that included a joint venture with GTS Transatlantic ("GTS") to build a fiber optic cable connecting New York, London and Paris called the Flag Atlantic-1 System (the "FA-1 System"). (*Id.* ¶ 54.) By early 2000, Flag allegedly became insolvent after a glut of supply on the telecommunications market caused a rapid decline in the price of capacity on international fiber optic networks. According to plaintiff, even after becoming insolvent, the company continued "its reckless expansion program." (*Id.* ¶¶ 4, 5.) For example, in March 2000, the company issued approximately $600 million in bonds and made significant investments in the FA-1 System, a separate program of expansion into north Asia and a fiber optic network in Europe. (*Id.* ¶ 5.) Flag then entered into a series of transactions with Verizon, on terms favorable to Verizon, that deepened Flag's insolvency. (*Id.*)

Rather than reveal Flag's insolvency, the individual defendants, who were officers and directors of Flag, allegedly concealed the company's financial woes by filing false financial statements with the SEC from 2000 until April 2002, and by making false statements in press

---

[3] All references to the "Complaint" are to plaintiff's Verified Complaint, dated November 19, 2003.

releases each time Flag announced its financial results during that period. (*Id.* ¶ 6.) According to plaintiff, the individual defendants caused Flag to report its financial results in violation of Generally Accepted Accounting Principles ("GAAP"), (*id.* ¶ 45), and issued misleading "pro forma" financial reports. (*Id.* ¶ 151.) The individual defendants also allegedly caused the company to engage with competitors in numerous swaps of "dark" or unused fiber capacity to artificially inflate revenues, (*id.* ¶¶ 109-132), and failed to timely write-down the impairment of Flag's long-lived assets. (*Id.* ¶ 162.)

On February 13, 2002, Flag announced that it was reviewing its business "in light of deteriorating market conditions." (*Id.* ¶ 194.) On April 12, 2002, Flag and four of its subsidiaries filed Chapter 11 bankruptcy petitions. Shortly thereafter, other Flag subsidiaries filed Chapter 11 bankruptcy petitions. (*Id.* ¶ 195.) On September 26, 2002, the bankruptcy court approved Flag and its subsidiaries' Third Amended and Restated Joint Plan of Reorganization (the "Reorganization Plan" or the "Plan"). (Andersen Defs. Mem. Supp. Mot. Dismiss at 2.) The Plan became effective on October 9, 2002, and a new entity, Flag Telecom Group Ltd. ("New Holdco"), emerged from the bankruptcy. (D&O Defs. Mem. Supp. Mot. Dismiss at 8.)

Under the Reorganization Plan, certain Flag bondholders and creditors (the "New Holdco shareholders" or the "Litigation Trust Beneficiaries") were granted ownership of 100% of the common shares of New Holdco. (*Id*. at 8.) On January 11, 2004, Reliance Gateway Net Private Ltd. acquired those shares after the New Holdco shareholders approved such sale. (*Id*.)

The Reorganization Plan also created the Litigation Trust which is described as a "'New York liquidating trust established as part of Flag's reorganization for the benefit of certain Flag creditors,' and establishes Rahl's authority to bring certain claims previously held by Flag (and/or certain subsidiaries or affiliates) and assigned by Flag to the Litigation Trust." (*Id*. (quoting Complt.

¶ 15).)  The Litigation Trust Agreement (or the "Trust Agreement") provides:

> [O]n or after the Effective Date of the Plan, the Litigation Trust and the Debtors hereby transfer, assign and deliver to the Trustee all of their right, title and interest in and to any and all choses in action, demands, claims for relief, causes of action, debts, losses and liabilities, or any combination of the same, of every type and nature whatsoever, whether known or unknown, whether suspected or unsuspected, and whether asserted or unasserted, against the Debtors' current or former directors and officers, together with all insurance coverage applicable to such choses in action, including all choses in action against insurers that sold insurance policies covering liabilities of the Debtors and their directors and officers (the "Causes of Action"). . . . The Trustee agrees to accept and hold the Causes of Action in trust for the Litigation Trust Beneficiaries, subject to the terms of this Trust Agreement.

(Section 1.01 (provided as Goldstein Decl., Ex. C).)  The New Holdco shareholders are the Litigation Trust Beneficiaries, (Reorganization Plan § 1.1.100 (provided as Goldstein Decl., Ex. B).), and Rahl is the Litigation Trust Trustee.  (D&O Defs. Mem. Supp. Mot. Dismiss at 8.)  The Trustee brings the present action pursuant to this grant of authority.

Counts I, II and III of the Complaint assert claims for breach of fiduciary duty against the individual defendants and Andersen.  These claims are based on the Bermuda Companies Act of 1981 (the "Companies Act") and the general duty of good faith and loyalty that fiduciaries owe to their corporations.  (Complt. ¶¶ 255, 265, 272.)  Plaintiff alleges that the individual defendants breached their fiduciary duties by: (1) deepening Flag's insolvency to enhance their personal wealth (*id.*, Count I); (2) issuing false financial statements (*id.*, Count II); and (3) causing Flag to enter into certain transactions under terms that were unfavorable to Flag.  (*Id.*, Count III.)

Count IV of the Complaint asserts a claim against Verizon whereby the Trustee seeks to avoid an allegedly fraudulent conveyance to Verizon pursuant to 11 U.S.C. § 544(b) which incorporates N.Y. DEBT. AND CRED. LAW §§ 270-281.  Plaintiff alleges that Flag provided KPNQwest with capacity on its FA-1 System in exchange for capacity on KPNQwest's European

network. According to plaintiff, Flag then sold the capacity on the European network to Verizon for prices below market value and far less than those Flag paid for the capacity. (Complt. ¶ 69.) Count VII of the Complaint purports to state a claim against Verizon for aiding and abetting this allegedly fraudulent conveyance.

Count V of the Complaint asserts claims against Qwest and Verizon for aiding and abetting the breaches of fiduciary duty that plaintiff asserts in Count I of the Complaint.[4] Count VI of the Complaint asserts a claim against Qwest for aiding and abetting the breaches of fiduciary duty that allegedly occurred in connection with the issuance of Flag's financial statements. In Count VIII, plaintiff claims that certain individual defendants were agents of Verizon or Dallah and that those companies are therefore liable for their agents' breaches under the doctrine of *respondeat superior*. Count IX of the Complaint asserts a claim against McCormack for allegedly causing one of Flag's subsidiaries to issue a dividend in violation of § 54 of the Companies Act. Finally, Count X of the Complaint asserts a claim against Andersen for professional malpractice.

In the present motion, the D&O defendants, Verizon, Qwest and Andersen[5] move under FED. R. CIV. P. 9(b) and 12(b)(6) to dismiss for failure to state a claim and under the doctrine of *forum non conveniens*.

---

[4] In Count I, plaintiff alleges that the individual defendants and Andersen exacerbated Flag's insolvency to enhance their own personal wealth.

[5] Verizon, Qwest and Andersen are referred to collectively as the "corporate defendants" with respect to the present motion.

**DISCUSSION**

## I.      Applicable Legal Standard

On a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all of the well-pleaded facts and consider those facts in the light most favorable to the plaintiff. *See Scheuer  v. Rhodes,* 416 U.S. 232, 236 (1974), *overruled on other grounds*, *Davis v. Scherer*, 468 U.S. 183 (1984); *Hertz Corp. v. City of New York*, 1 F.3d 121, 125 (2d Cir. 1993); *In re AES Corp. Sec. Litig.*, 825 F. Supp. 578, 583 (S.D.N.Y. 1993).

On such a motion, the issue is "whether the claimant is entitled to offer evidence to support the claims." *Scheuer*, 416 U.S. at 236.  A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Padavan v. United States*, 82 F.3d 23, 26 (2d Cir. 1996) (quoting *Hughes v. Rowe*, 449 U.S. 5, 10 (1980)).  Generally, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.34[1][b] (3d ed. 1997); *see also Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995).  Allegations that are so conclusory that they fail to give notice of the basic events and circumstances of which plaintiff describes, are insufficient as a matter of law.  *See Martin v. New York State Dep't of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir. 1978).

In assessing the legal sufficiency of a claim, the court may consider only the facts alleged in the complaint, and any document attached as an exhibit to the complaint or incorporated in it by reference.  *See* FED. R. CIV. P. 10(c); *see also Dangler v. New York City Off Track Betting Corp.,* 193 F.3d 130, 138 (2d Cir. 1999) (citations omitted); *De Jesus v. Sears, Roebuck & Co., Inc.*, 87

6

F.3d 65, 69 (2d Cir. 1996).


## II.     Corporate Defendants

### A.     Standing

Defendants maintain that Rahl lacks standing to bring claims against the corporate defendants under the Trust Agreement and that the action against the corporate defendants should therefore be dismissed.   The Trust Agreement expressly provides that the Litigation Trust and the Debtors transfer, assign, and deliver to the Trustee

> all of their right, title and interest in and to any and all choses in action, demands, claims for relief, causes of action, debts, losses and liabilities, or any combination of the same, of every type and nature whatsoever, whether known or unknown, whether suspected or unsuspected, and whether asserted or unasserted, *against the Debtors' current or former directors and officers*, together with all insurance coverage applicable to such choses in action, including all choses in action against insurers that sold insurance policies covering liabilities of the Debtors and their directors and officers.

(Trust Agmt. § 1.01 (emphasis added).)[6]  Consequently, the corporate defendants maintain that the plain and unambiguous language of the Reorganization Plan and Trust Agreement demonstrate that the Trustee was assigned all potential claims only against Flag's current or former directors and

---

[6] Additionally, Flag's Reorganization Plan, which was approved by the Bankruptcy Court on September 26, 2002, also provides that "the Debtors shall transfer and assign any choses in action then in existence possessed by the Debtors against any of their officers and directors, together with all insurance coverage applicable . . ., to the Litigation Trust, which will retain and liquidate these choses of action as the successor to the Debtors for these purposes." (Reorganization Plan § 7.22.1 (provided as Francis Decl., Ex. A).)  Furthermore, the Plan provides that "[e]xcept as expressly set forth in the Plan, . . . the Reorganized Debtors do not release or abandon any claims, demands or causes of action owned by them, . . . and the Reorganized Debtors may seek to assert such claims, demands and causes of action against any persons at any time . . . ."  (*Id.* § 7.14.)

officers, and in no way does the Plan or Trust Agreement confer standing to the Trustee to bring claims against third parties who allegedly aided and abetted the current or former directors and officers in breaching their fiduciary duties. (Qwest Def. Mem. Supp. Mot. Dismiss at 4-5; Verizon Def. Mem. Supp. Mot. Dismiss at 5; Andersen Def. Mem. Supp. Mot. Dismiss at 9.) According to defendants, "the Trustee lacks authority to assert claims against anyone other than the current or former directors and officers of Flag or certain Flag subsidiaries or affiliates." (D&O Defs. Mem. Supp. Mot. Dismiss at 1 n.2.)

Plaintiff maintains that Flag's bankruptcy Plan was filed pursuant to title 11 of the United States Code and that pursuant to the Plan, the word "claim" is used as defined in Section 101(5) of the Bankruptcy Code. (Pl. Mem. Opp. Verizon Mot. Dismiss at 7 (citing Reorganization Plan § 1.1.31).) In asserting that the Trustee has standing to maintain an action against the corporate defendants, plaintiff relies on *Mazzeo v. United States* (*In re Mazzeo*), 131 F.3d 295, 302 (2d Cir. 1997), wherein the Second Circuit acknowledged that the word "claim" is to be interpreted as broadly as possible under the Bankruptcy Code to encompass any possible right to payment. *See id.* at 302 (noting that "courts have characterized the term 'claim' as, *inter alia*, 'broad,' 'very broad,' 'extremely broad[],' the 'broadest possible,' and 'sufficiently broad to cover any possible obligation' to make payment.") (collecting cases) (citations omitted). Consequently, plaintiff contends that the claims transferred to the Trustee in Section 1.01 of the Litigation Trust must be given the "broadest possible" meaning which, according to plaintiff, would include the claims against the corporate defendants. (Pl. Mem. Opp. Verizon Mot. Dismiss at 7.)

It is undisputed that plaintiff's authority to maintain the present action derives from the Reorganization Plan and the Litigation Trust Agreement. However, we agree with defendants that

plaintiff lacks standing with respect to the corporate defendants. The language of the Litigation Trust Agreement is clear: the Trustee was assigned the right, title and interest to all claims for relief or causes of action "against the Debtors' current or former directors and officers." By no stretch of its meaning does this language also assign the Trustee the right, title and interest to claims and causes of actions against third parties.

"As with any contract, the starting point for review of a plan is its plain language. Unless some ambiguity is to be found within the plan itself, the Court has no basis to look beyond its text." *Charter Asset Corp. v. Victory Markets, Inc., (In re Victory Markets)*, 221 B.R. 298, 303 (B.A.P. 2d Cir. 1998) (citations omitted). "Where the language of the plan is unequivocal, therefore, a Court must adopt the plain and natural meaning only of the words contained within the text of the instrument itself." *Id.* Whether a provision of a contract is ambiguous is a matter of law for the court. *See Mellon Bank, N.A. v. United Bank Corp.*, 31 F.3d 113, 115 (2d Cir. 1994).

It is well-settled that "[w]here . . . the meaning of an agreement among sophisticated parties is unambiguous on its face, the agreement does not become ambiguous simply because one of the parties later asserts that it intended a different interpretation." *New Bank of New England, N.A., v. Toronto-Dominion Bank*, 768 F. Supp. 1017, 1022 (S.D.N.Y. 1991). Contract language is not ambiguous unless "it is reasonably susceptible of more than one interpretation, and a court makes this determination by reference to the contract." *Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank*, 57 F.3d 146, 152 (2d Cir. 1995). Furthermore, courts are not permitted to add or rewrite terms of a contract under the guise of interpretation when the term is clear and unambiguous, nor may a court "redraft a contract to accord with its instinct for the dispensation of equity upon the facts of a given case." *Terwilliger v. Terwilliger*, 206 F.3d 240, 245 (2d Cir. 2000).

In the case at bar, the provision in question is clear. The Trust Agreement transferred and assigned claims only against the Debtors' former or current debtors. Although plaintiff maintains that the word "claim" should be given the broadest possible meaning, this does not change the fact that the Trustee was assigned claims only against former or current directors or officers. A broad definition of the term "claim" affects only the types of claims which may be brought and not the identities of the parties against whom they may be brought. Accordingly, plaintiff does not have standing to maintain an action against the corporate defendants unless they are deemed to be former or current directors or officers of Flag, which plaintiff maintains should be done with respect to Verizon and Andersen.

Plaintiff maintains that Andersen was an officer of Flag under Bermuda law, which plaintiff contends is the law applicable to the internal governance of Flag. (Pl. Mem. Opp. Andersen Mot. Dismiss at 11.) Andersen, however, contends that pursuant to the Litigation Trust Agreement New York law governs and that under New York law an auditor cannot be an "officer" or "director." (Andersen Def. Reply Mem. Supp. Mot. Dismiss at 4.) Section 10.04 of the Litigation Trust Agreement specifically provides that it "shall be governed and, construed in accordance with the laws of the State of New York, without giving effect to rules governing the conflicts of law."

It is well-settled that where a choice of law provision is expressly set forth in an agreement, it is presumed to be the parties' intent, and New York courts will enforce it. *See RJE Corp. v. Northville Indus. Corp.*, 329 F.3d 310, 314 (2d Cir. 2003); *see also Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 393 (2d Cir. 2001); *In re Teligent Inc.*, No. 04 Civ. 6171, 2005 WL 1153733, at *10 (S.D.N.Y. May 12, 2005) (noting that "both New York and federal choice of law rules require that a contractual choice of law provision . . . should be honored provided that there is some

relationship between the law chosen and the transaction"); *De Angelo v. Altmayer*, 59 A.D.2d 847, 847, 399 N.Y.S.2d 11 (1st Dep't 1977). Accordingly, New York law will be applied to all issues surrounding the Litigation Trust Agreement, including the determination of whether Andersen was a director or officer of Flag, "without giving effect to rules governing the conflicts of law" as required by the choice of law provision set forth in the Trust Agreement.

Andersen maintains that under New York law an auditor can never be an "officer" or "director" of the company it is auditing, a point which is not disputed by plaintiff. (Andersen Def. Reply Mem. Supp. Mot. Dismiss at 4.) In making this assertion, Andersen relies on the fact that "officers and auditors hold positions with mutually irreconcilable duties." (Andersen Def. Mem. Supp. Mot. Dismiss at 11.) "[W]hile an officer owes his complete and undivided allegiance to his corporation . . . an auditor must maintain independence from the corporation." (*Id.* at 14.) "An 'officer' is 'a person elected or appointed by the board of directors to manage the daily operations of a corporation, such as a CEO, president, secretary, or treasurer.'" (*Id.* at 12 (quoting BLACK'S LAW DICTIONARY 1117 (8th ed. 2004).) An officer, as a fiduciary of a corporation, "owes his corporation an undivided loyalty and an allegiance that is influenced by no consideration other than the welfare of the corporation." *Keehan v. Keehan*, No. 96 Civ. 2481, 2000 WL 502854, at *4 (S.D.N.Y. Apr. 25, 2000); *see also Grand Union Mount Kisco Employees Federal Credit Union v. Kanaryk*, 848 F. Supp. 446, 457-58 (S.D.N.Y. 1994). An auditor, however, has "a duty of total independence from the corporation." (Andersen Def. Mem. Supp. Mot. Dismiss at 13.) In fact, New York's licensing authority over accountants explicitly prohibits an independent auditor from being an officer or director of a company it is reviewing. *See* N.Y. COMP. CODES R. & REGS. tit. 8, § 29.10(a)(5).

Furthermore, Andersen points out that the Complaint contains factual allegations that

Andersen "served as FLAG's *outside, independent* certified public accounting firm." (*Id.* (citing Complt. ¶¶ 43, 238-49, 328).) Plaintiff cites no comparable factual allegations to support the assertion in the Complaint that Andersen was an officer or director of Flag. (*Id.*) As discussed above, "[g]eneral, conclusory allegations need not be credited . . . when they are belied by more specific allegations of the complaint." *Hirsch*, 72 F.3d at 1092; *see also Reading Int'l, Inc. v. Oaktree Capital Mgmt., LLC*, 317 F. Supp. 2d 301, 322 (S.D.N.Y. 2003). Consequently, we conclude that Andersen, Flag's former outside, independent auditor, is not a former or current director or officer of Flag and, therefore, plaintiff lacks standing to maintain an action against Andersen.

With respect to Verizon, plaintiff contends that it "had a significant ownership stake in [Flag] Telecom, pursuant to which Verizon designated several directors on the Telecom board. Thus, Verizon effectively was a member of the board and is vicariously liable as a director for the breaches of fiduciary duty by the D&O Defendants who served on FLAG's board but who were controlled by Verizon." (Pl. Mem. Opp. Verizon Mot. Dismiss at 10.) While it is true that a principal or employer may be vicariously liable for the acts of their agents or employees in the scope of their authority or employment under the doctrine of *respondeat superior*, this does not mean that plaintiff has standing to maintain a suit against Verizon. The Trust Agreement explicitly states that the Trustee was assigned all actions "against the Debtors' current or former directors and officers." Nowhere does this provision also grant authority to maintain an action against those who are allegedly vicariously liable for the actions of the current or former directors and officers. Accordingly, plaintiff does not have standing to maintain an action against Verizon under the doctrine of *respondeat superior*.

For the reasons stated above, we conclude that plaintiff lacks standing to maintain an action

against the corporate defendants, and that all claims against the corporate defendants must be dismissed.

## III.    The D&O Defendants

###     A.    Motion to Dismiss on *Forum Non Conveniens* Grounds

The D&O defendants maintain that if the corporate defendants are dismissed from the action, the circumstances are such that the remaining claims against the directors and officers should be adjudicated in Bermuda.  (D&O Defs. Mem. Supp. Mot. Dismiss at 1.)  Thus, the D&O defendants contend that the present action should be dismissed on *forum non conveniens* grounds.  (*Id.*)  Plaintiff, however, contends that New York is a proper forum and that there is "no valid argument that litigation in this forum is 'genuinely inconvenient' or that Bermuda is 'significantly preferable.'" (Pl. Mem. Opp. D&O Defs. Mot. Dismiss at 17 (citing *Iragorri v. Int'l Elevator Inc.*, 243 F.3d 678, 680 (2d Cir. 2001)).)  In addition, plaintiff notes that this action has been accepted as related to the Flag Securities Litigation which is currently pending before this Court.  (Pl. Mem. Opp. D&O Defs. Mot. Dismiss at 18.)

The doctrine of *forum non conveniens* permits a court, in its discretion, "to resist the imposition upon its jurisdiction," even though jurisdiction may be lawfully exercised and venue is technically proper, where the convenience of the parties and interests of justice favor trial in another forum.  *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947); *see also Koster v. Am. Lumbermens Mut. Casualty Co.*, 330 U.S. 518, 527 (1947).  Dismissal is appropriate where "trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable

13

to offer any specific reasons of convenience supporting his choice." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249 (1981). Generally, there is a strong presumption in favor of the plaintiff's chosen forum, which will be upset only if the defendants can demonstrate: (1) that an adequate alternative forum exists; and (2) that, considering relevant private and public interest factors, the balance of convenience tips strongly in favor of trial in the alternative forum. *See id.* at 255; *see also Murray v. British Broadcasting Corp.*, 81 F.3d 287, 290 (2d Cir. 1996); *ESI, Inc. v. Coastal Corp.*, 61 F. Supp. 2d 35, 63 (S.D.N.Y. 1999) (Conner, J.). Because the doctrine of *forum non conveniens* presupposes at least two fora in which the action may proceed, the court must initially determine whether an adequate alternative forum in fact exists. *Gilbert*, 330 U.S. at 506-07; *Piper Aircraft*, 454 U.S. at 254 n.22; *Doe v. Hyland Therapeutics Div.*, 807 F. Supp. 1117, 1122 (S.D.N.Y. 1992) (Conner, J.). Once the availability of an alternate forum is established, the court weighs, as matter within its sound discretion, the relevant private and public interest factors to assess whether dismissal from the present forum is appropriate. *See Piper Aircraft*, 454 U.S. at 256; *Hyland Therapeutics*, 807 F. Supp. at 1122.

As a threshold matter, we must first consider the degree of deference to be accorded to plaintiff's choice of forum. *See VictoriaTea.com, Inc. v. Cott Beverages, Canada*, 239 F. Supp. 2d 377, 380 (S.D.N.Y. 2003) (citations omitted). In the case at bar, the D&O defendants concede that a plaintiff's choice of forum is generally accorded substantial weight in deciding a *forum non conveniens* motion, but they contend that where a plaintiff is not acting in his individual capacity, as here, plaintiff's choice of forum should be accorded little if any weight. (D&O Defs. Mem. Supp. Mot. Dismiss at 13-14.) The D&O defendants further point out that this is especially true in the present case because plaintiff was assigned these claims by Flag, a Bermuda corporation. (*Id*. at 13;

D&O Defs. Reply Mem. Supp. Mot. Dismiss at 7.)  It is well-settled that an assignee such as plaintiff stands in the shoes of its assignor and is entitled only to the rights of the assignor.  *See Blue Planet Software, Inc. v. Games Intern, LLC*, 334 F. Supp. 2d 425, 433 (S.D.N.Y. 2004) ("An assignee generally may not acquire more rights than were possessed by the assignor and 'simply stands in the shoes of the assignor.'") (citing *Furlong v. Shalala*, 156 F.3d 384, 392 (2d Cir. 1998); 6 Am. Jur. 2d *Assignments* §§ 118, 145 (1999)).

Although there is generally a strong presumption in favor of a plaintiff's choice of forum, "a foreign plaintiff's choice of forum . . . is entitled to a lesser degree of deference given the 'realistic doubt about the ultimate convenience of a foreign plaintiff's choice to litigate in the United States.'" *Chubb Ins. Co. of Europe S.A. v. M/V Humboldt Express*, No. 02 Civ. 1294, 2003 WL 22434092, at *2 (S.D.N.Y. Oct. 24, 2003).  In addition, "where the local claimant is only nominally American, as in the case of an assignee of a foreign corporation, the 'courts have generally refused to give special deference' to plaintiff's choice of forum." *VictoriaTea.com*, 239 F. Supp. 2d at 381 (citations omitted).  However, "[a]ffording less deference to representative plaintiffs does not mean they are deprived of all deference in their choice of forum." *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 28 (2d Cir. 2002).  The Second Circuit has instructed that with respect to determining the amount of deference to give to a plaintiff's choice of forum, "'[t]he more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice.'" *Id.* (quoting *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71-72 (2d Cir. 2001)).  "Stated differently, the greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United

States, the more difficult it will be for the defendant to gain dismissal for *forum non conveniens*."

*Gross v. British Broadcasting Corp.*, 386 F.3d 224, 230 (2d Cir. 2004) (citing *Iragorri*, 274 F.3d at 71-72).

With these principles in mind, we will now consider whether dismissal pursuant to the doctrine of *forum non conveniens* is appropriate in this case.

### 1.    Existence of Adequate Alternative Forum

The requirement that an adequate alternative forum exists will be satisfied where the defendants are "amenable to process" in the alternate jurisdiction. *Piper Aircraft*, 454 U.S. at 254-55 and n.22. Additionally, a forum may be considered inadequate, in certain "rare circumstances," where the remedy it provides is "so clearly inadequate or unsatisfactory that it is no remedy at all." *Id.*

In the case at bar, the D&O defendants maintain that Bermuda is an adequate alternative forum. (D&O Defs. Mem. Supp. Mot. Dismiss at 20.) First, the D&O defendants point out that "Bermudian law does in fact permit an action to be brought by a corporation against its directors and officers and such action can be assigned by the corporation to a third party." (*Id.*) In addition, as stated in the Complaint, all claims brought against the directors and officers in the present action are brought under Bermuda Law, namely the Bermuda Companies Act of 1981. (*Id.* at 20-21.) The D&O defendants maintain that the courts of Bermuda have subject matter jurisdiction over this action and that "this action would be heard by the Supreme Court of Bermuda (a court of first instance), which would also have *in personam* jurisdiction over the D&O Defendants." (*Id.* at 21-22

(citing Diel Decl. ¶¶ 9, 12).)  According to the D&O defendants, "[u]nder Bermudian law, as former or current directors or officers of a Bermuda corporation, all of the D&O Defendants are subject to the jurisdiction of the Supreme Court of Bermuda in respect to their actions as directors and officers."  (*Id*. at 22 (citing Diel Decl. ¶ 13).)  Moreover, defendants note that Bermuda "unquestionably has an independent judiciary and the judicial procedures of its courts satisfy due process" and that "[a]t trial, each party has the opportunity to present witnesses and to cross-examine witnesses."  (*Id*. at 21 (citing Diel Decl. ¶ 11).)  Further, "Bermudian law contains provisions to ensure the appearance of witnesses.  These provisions provide for the issuing of witness summons and the taking of evidence in other jurisdictions."  (Diel Decl. ¶ 10.)

Plaintiff, however, contends that Bermuda is not an adequate forum and "[b]ut for the fact that FLAG was incorporated in Bermuda, Bermuda has virtually no local interest in this litigation." (Pl. Mem. Opp. D&O Defs. Mot. Dismiss at 20.)  In addition, plaintiff notes that almost no witnesses or documentary evidence are located in Bermuda; rather, they are located in either the United States or England.  (*Id*.)  Furthermore, plaintiff points out that even though Flag was a Bermuda corporation, Flag's bankruptcy proceeding was conducted in this district.  (*Id*.)  However, the location of witnesses and evidence and of Flag's bankruptcy proceeding are not relevant to whether an adequate forum exists; instead, it is more appropriately taken into account when considering and balancing the private and public interest factors.

Because the D&O defendants are subject to the jurisdiction of the Bermuda courts and Bermuda permits litigation of the kind presented in the present action, we conclude that an adequate alternative forum exists.  Accordingly, we will now consider the private and public interests implicated in a *forum non conveniens* analysis.

## 2. <u>Private and Public Interest Factors</u>

In determining a motion to dismiss based on *forum non conveniens*, the Court must weigh a variety of private and public interest factors to determine whether "the convenience of the parties and the ends of justice would be best served by dismissing the action." *Murray*, 81 F.3d at 293. The private interest factors that we must consider, as set forth in *Gilbert*, 330 U.S. at 508-09, include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses; (3) the cost of obtaining attendance of willing witnesses; (4) the need, if any, to view the premises at issue; (5) the enforceability of a judgment; and (6) all other practical problems that make trial of a case easy, expeditious and inexpensive. The relevant public interest factors include: (1) the administrative difficulties flowing from court congestion; (2) interest in having localized controversies decided at home; (3) the unfairness of burdening citizens in an unrelated forum with jury duty; (4) the forum's familiarity with governing law; and (5) the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law. *Gilbert*, 330 U.S. at 508-09. Application of these so-called "*Gilbert* factors" varies depending on the unique facts of each case, and the inquiry is intended to be flexible, with no particular emphasis on any single factor. *See Ernst v. Ernst*, 722 F. Supp. 61, 64 (S.D.N.Y. 1989) (citing *Piper Aircraft*, 454 U.S. at 249-50).

### a. <u>Private Interest Factors</u>

First, as to the relative ease of access to sources of proof, plaintiff maintains that "most or all of the evidence relevant in this case will have to be produced in the United States in the *FLAG*

*Securities Case"*[7] and "[b]ecause all of this information will be made available to the plaintiffs in the *Flag Securities Case*, the consideration of access to evidence (factor 1) weighs heavily in favor of keeping this case in this Court." (Pl. Mem. Opp. D&O Defs. Mot. Dismiss at 26.) Although related litigation in a particular forum is not a factor recognized in *Gilbert* and therefore should not be given decisive weight, *see Guidi v. Inter-Cont'l Hotels*, 224 F.3d 142, 148 (2d Cir. 2000), it is relevant with respect to access to sources of proof and will be considered accordingly. In contrast, the D&O defendants maintain that the first factor, access to sources of proof, weighs in favor of Bermuda because most of the documents pertaining to this matter are located primarily in the United Kingdom or Bermuda because Flag's "longtime headquarters and principal place of business is in London" and the company's auditors reside in Bermuda. (D&O Defs. Mem. Supp. Mot. Dismiss at 19.)

However, absent an explanation by defendants as to "how transporting the documents or copies of them would be 'oppressive' or 'vexatious,'" less weight should be accorded to factor one in determining whether the existing alternative forum is more appropriate. *DiRienzo*, 294 F.3d at 30; *cf. Itoba Ltd. v. LEP Group PLC*, 930 F. Supp. 36, 44 (D. Conn. 1996) ("To the extent documents exist in England, advances in transportation and communication accord this issue less weight."). In the present case, the D&O defendants have failed to explain how transporting the documents or copies thereof would be "oppressive" or "vexatious." In addition, because the related case, the Flag Securities Litigation, is pending in this district and much of the documentary evidence

---

[7] Plaintiff's reference to the Flag Securities Case refers to what is described herein as the Flag Securities Litigation.

in this action will also be required in the Flag Securities Litigation,[8] factor one weighs in favor of keeping this action in this Court.

With respect to the second and third private interest factors, the availability of compulsory process for attendance of unwilling witnesses and the cost of obtaining attendance of willing witnesses, these factors appear neutral. Plaintiff maintains that the same witnesses who are likely to be relevant to this case also will be relevant to the Flag Securities Litigation. (Pl. Mem. Opp. D&O Defs. Mot. Dismiss at 27.) Although a related case in the forum is not a *Gilbert* factor, nor is it determinative, plaintiff contends, and we agree, that discovery in this case can be coordinated with discovery in the Flag Securities Litigation, i.e., "requiring only a single deposition for many witnesses, rather than the multiple depositions that would result if the cases were pending in two separate forums." (*Id.*) In addition, plaintiff notes that "to the extent that witnesses are not subject to compulsory process, there is no basis for any claim that more witnesses will be subject to compulsory process in Bermuda than in the United States," a point that defendants do not dispute other than asserting non-specifically that most of the witnesses are in Bermuda. (*Id.*; D&O Defs. Reply Mem. Supp. Mot. Dismiss at 13.) The D&O defendants maintain that "most of the witnesses that will presumably be needed to testify are former or current employees of Flag who reside outside the United States, or Arthur Andersen & Co. auditors, who are likely in Bermuda." (D&O Defs. Mem. Supp. Mot. Dismiss at 19.) In response, plaintiff asserts that "even if there were Arthur Andersen employees who had to travel to the U.S. to testify, the burden on them to do so would not be great." (Pl. Mem. Opp. D&O Defs. Mot. Dismiss at 27 n.13 (citing *Cromer Finance Ltd. v.*

---

[8] As previously recognized by this Court, there are many factual similarities between the present action and the Flag Securities Litigation. *See generally In re Flag Telecom Holdings, Ltd. Secs. Litig.*, 352 F. Supp. 2d 429, (S.D.N.Y. 2005) (Conner, J.).

*Berger*, 158 F. Supp. 2d 347, 361-62 (S.D.N.Y. 2001) ("[W]hile it is important to weigh from every relevant perspective the burden on the Bermuda defendants of litigation in New York as opposed to in their own home, any fair evaluation of the extent of that burden must also take into account that these defendants expressed no reluctance to perform work emanating from the United States . . . . In short, they expressed a desire to perform on a global stage when it was in their interest to do so.")).) Because both plaintiff and the D&O defendants have raised concerns that weigh in favor of each forum, we find the second and third private interest factors to be neutral. Neither party has claimed that the testimony of any critical witness will be unavailable in either forum, tending to confirm that this factor is neutral. *See ESI*, 61 F. Supp. 2d at 65 (citations omitted).

The fourth and fifth factors are also neutral because there are no premises at issue in the present action and both fora would render judgments that would be enforceable. Neither party has contended, much less demonstrated, that a judgment of either court would be unenforceable against the D&O defendants in the United States or abroad. Lastly, with respect to the sixth factor, which allows a court to consider all other practical problems that make trial of a case easy, expeditious and inexpensive, this factor weighs in favor of plaintiff. The related case pending in this Court involves similar factual issues and several of the same defendants. Discovery can be coordinated to make the trial of this action less expensive and protracted. Although related litigation is not determinative, it is relevant to balancing the convenience of the parties and the ends of justice in this particular case. In addition, we note that "in terms of 'other practical problems' that impact the difficulty and expense of trying a case, [we] agree with Judge Newman of the Second Circuit that 'in light of the realities of modern transportation and communications . . . [a] forum is not necessarily inconvenient because of its distance from pertinent parties or places if it is readily accessible in a few hours of air

travel.'" *Bank of Am. Corp. v. Lemgruber*, No. 02 Civ. 1041, 2005 WL 19274, at *29 (S.D.N.Y. Jan. 5, 2005) (quoting *Calavo Growers of Cal. v. Generali Belgium*, 632 F.2d 963, 969 (2d Cir. 1980) (Newman, J. concurring), *cert. denied*, 449 U.S. 1084 (1981)).

Consequently, on the evidence presented, the balance of the private interest factors weigh slightly in favor of plaintiff. Accordingly, we will now consider and weigh the public interest factors.

### b.   <u>Public Interest Factors</u>

The first public interest factor, administrative difficulties flowing from court congestion, is neutral. Although the courts in the Southern District of New York are heavily congested, *see PT United Can Co. v. Crown Cork & Seal Co.*, No. 96 Civ. 3669, 1997 WL 31194, at *9 (S.D.N.Y. Jan. 28, 1997), *aff'd*, 138 F.3d 65 (2d Cir. 1998), it is well-accepted that the Southern District of New York has the resources to adjudicate complex litigation such as the present action. *See Cromer*, 158 F. Supp. 2d at 355 ("Defendants argue for transfer to Bermuda based on the congested docket in the Southern District of New York in comparison to that of Bermuda. . . . While the docket of the Southern District is an active one, courts in this district have shown themselves more than able to address the issues that arise in complex actions in an expeditious and comprehensive manner."); *see also HSBC USA, Inc. v. Prosegur Paraguay, S.A.*, No. 03 Civ. 3336, 2004 WL 2210283, at *2 n.1 (S.D.N.Y. Sept. 30, 2004) (noting that "the Court of Appeals made clear that this consideration [court congestion] is not relevant within the Second Circuit as long as all judicial vacancies are filled, resulting in a 'full complement of judges for the District'") (quoting *Guidi*, 224 F.3d at 147 n.5); *Miller v. Calotychos*, 303 F. Supp. 2d 420, 429 (S.D.N.Y. 2004) ("The Court is not prepared to make subjective or conclusory assessments of docket congestion here as opposed to London, or

of the relative speed with which the matter may be resolved in either venue. Suffice it to say that, with the parties cooperation and good will, the Court can schedule a trial on the merits within a reasonable period following the completion of all discovery or rulings on any dispositive motions.").

Next, we must consider the second public interest factor, interest in having localized controversies decided at home. The D&O defendants maintain that "because this dispute involves the internal affairs of a Bermudian corporation, the public interest balance weighs strongly in favor of Bermuda" and further argue that "New York has scant interest in the adjudication of these claims." (D&O Defs. Mem. Supp. Mot. Dismiss at 15.) Plaintiff, however, contends that the issue is not whether New York has a local interest in the case, but whether the United States has such an interest. (Pl. Mem. Opp. D&O Defs. Mot. Dismiss at 22.) In thus framing the issue, plaintiff relies on *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. BP Amoco*, *P.L.C.*, No. 03 Civ. 0200, 2003 WL 21180421, at *9 n.8 (S.D.N.Y. May 20, 2003), wherein the court stated "because the doctrine of forum non conveniens is used to choose between foreign and United States fora, rather than between different United States judicial districts, *Levin v. Miss. River Corp.*, 289 F. Supp. 353, 362 (S.D.N.Y. 1968), the appropriate inquiry here is whether the United States as a whole, not just New York, has an interest in adjudicating the dispute." *Nat'l Union Fire Ins.*, 2003 WL 21180421, at *9 n.8 (citing *DiRienzo*, 294 F.3d at 31-32 (discussing an American interest in the events giving rise to the controversy, and surveying similar cases)). We agree with plaintiff that the relevant inquiry is whether the United States has any meaningful interest in the present dispute.

Plaintiff maintains that the following facts indicate that the United States and, in particular, New York, has a strong local interest in this case: (1) plaintiff is the Litigation Trust, a trust established under the laws of New York with its principal place of business in New York County,

which "was created pursuant to the Plan of Reorganization of FLAG Telecom Holdings Ltd. and certain of its subsidiaries approved by the United States Bankruptcy Court for the Southern District of New York"; (2) "FLAG's reorganization was administered in the United States Bankruptcy Court for the Southern District of New York . . . [and] Plaintiff's claims are 'related to' FLAG's reorganization under Chapter 11"; (3) "[d]ebt securities purchased by FLAG's former creditors, who are the beneficiaries of the Litigation Trust and all of whom are U.S. companies – were marketed and sold primarily in or from New York"; (4) "Telecom's office was at 570 Lexington Avenue, . . . New York, New York and Telecom's CEO worked out of this office. As such the breaches of fiduciary duty were orchestrated from this office in the United States, which more than suffices for a 'local interest'"; (5) "FLAG's trans-Atlantic cable system, which is implicated in Plaintiff's fraudulent conveyance claims, physically terminates in New York"; and (6) "[f]our out of the six FLAG directors and officers . . . served with process in this case were served in the U.S. Since these defendants are residents or citizens of the U.S., the U.S. has a strong local interest in addressing the issues related to their conduct." (Pl. Mem. Opp. D&O Defs. Mot. Dismiss at 22-23.) Additionally, in response to the D&O defendants' argument that Bermuda's interest is overriding since several claims involve the internal affairs of Flag, a Bermuda corporation, plaintiff notes that the Supreme Court held that this is "'one, but only one, factor which may show convenience'" and that this alone does not mandate dismissal. (*Id*. at 24 n.10 (quoting *Piper Aircraft*, 454 U.S. at 249 (quoting *Koster*, 330 U.S. at 527)).)

In response, the D&O defendants contend that each of the factual assertions set forth by plaintiff in opposition to the present motion is "either erroneous or irrelevant in a *forum non conveniens* analysis." (D&O Defs. Reply Mem. Supp. Mot. Dismiss at 8.) The D&O defendants

24

maintain the following with respect to plaintiff's assertions: (1) "the fact that the Flag Litigation Trust was established under the laws of New York is irrelevant because . . . the claims against the D&O Defendants were assigned to the Flag Litigation Trust by Flag."  In addition, the D&O defendants assert that this is not a dispute about "the operation or administration of a New York trust, in which the state may have an interest, but a dispute about the governance of a Bermudian corporation"; (2) "the fact that Flag's reorganization was administered in the U.S. Bankruptcy Court for the Southern District of New York is also irrelevant because Flag's bankruptcy is not the issue in this action"; (3) "this case does not involve Flag's securities or any claims by securities holders. The only claims being litigated are those belonging to Flag"; (4) Flag's CEO was not based in, nor did he have an office, at the representative office that Flag maintained in New York, and neither did any other Flag officer, because the "New York office was nothing more than a small representative office maintained by a Flag subsidiary . . . [t]hus, no breaches of fiduciary duty could have been 'orchestrated' from New York"; (5) "the termination of Flag's trans-Atlantic cable is entirely irrelevant to New York's interest in this dispute"; and  (6) the residence of some of the D&O defendants is irrelevant.  (*Id*. at 9-10.)

We find that both Bermuda and the United States have, in varying degrees, a local interest in this action; therefore it is necessary for us to address each of the parties' contentions in turn.  With respect to the fact that the Litigation Trust was established under the laws of New York, this has little bearing on the *forum non conveniens* analysis because the claims against the D&O defendants were assigned to the Litigation Trust by Flag, a Bermuda corporation.  Similarly, the fact that Flag's reorganization was administered in the U.S. Bankruptcy Court for the Southern District is also irrelevant because Flag's bankruptcy is not presently at issue; rather, the central issue is whether the

D&O defendants breached their fiduciary duties. However, the fact that debt securities purchased by Flag's former creditors, who are U.S. companies and Litigation Trust Beneficiaries, were marketed and sold primarily in or from New York is highly relevant because the securities holders became stockholders of New Holdco and Litigation Trust Beneficiaries on whose behalf this suit was brought. Of course, the fact that Flag's trans-Atlantic cable system physically terminates in New York is irrelevant because it has no impact on whether litigating this action in a New York forum would be convenient.[9] However, with respect to the fact that Flag maintained a representative office in New York, it is not clear whether this implicates United States's interests because the parties disagree about whether any part of the alleged fraud and breach of fiduciary duties was orchestrated from that office. Additionally, it is not clear from the record the extent to which the New York office was used by Flag and its directors and officers. Accordingly, we find this fact to be neutral in balancing the localized interest factor. Lastly, the fact that four out of the six Flag directors and officers who were named as defendants were served with process in the United States and are either residents or citizens of the United States weighs nominally in favor of plaintiff. Although when considering a motion for dismissal on the grounds of *forum non conveniens* a court should not assign "'talismanic significance to the citizenship or residence of the parties,'"[10] this does not mean that the parties' citizenship or residence has no bearing on a forum's local interest in adjudicating the matter. *See, e.g., Cromer*, 158 F. Supp. 2d at 357 (concluding that United States had a strong interest "in addressing all of the factual issues implicated by this litigation, including the conduct of the

---

[9] Additionally, we note that the fraudulent conveyance claims against Verizon are dismissed unless a party with standing becomes a plaintiff in this action.

[10] *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 73 (2d Cir. 2003) (quoting *Alcoa S.S. Co. v. M/V Nordic Regent*, 654 F.2d 147, 154 (2d Cir. 1980)).

remaining American-resident defendants" and denying motion to dismiss on *forum non conveniens* grounds where four defendants were Bermuda accounting firms, one was an Austrian citizen residing in New York and one was a U.S. company). In the case at bar, we agree with plaintiff that the United States has a substantial interest in this dispute because most of the Litigation Trust Beneficiaries and D&O defendants are residents or citizens of the United States. Consequently, we conclude that the second public interest factor, interest in having localized controversies decided at home, is neutral because both Bermuda and the United States have a localized interest in this matter. Additionally, the third public interest factor, the unfairness of burdening citizens in an unrelated forum, is likewise neutral because both forums have a connection to this dispute.

Lastly, the fourth and fifth public interest factors, the forum's familiarity with governing law and the avoidance of unnecessary problems in conflict of laws or in the application of foreign law, weigh in favor of dismissal. The fact that foreign law may apply is often cited as a factor supporting dismissal. *See Hyland Therapeutics*, 807 F. Supp. at 1130; *see also Dowling v. Hyland Therapeutics Div., Travenol Labs., Inc.*, 767 F. Supp. 57, 59 (S.D.N.Y. 1991); *Ledingham v. Parke-Davis Div. of Warner-Lambert Co.*, 628 F. Supp. 1447, 1452 (E.D.N.Y. 1986). In the case at bar, Flag was incorporated in Bermuda and plaintiff's claims against the D&O defendants alleging breach of fiduciary duties are brought under the Companies Act. (D&O Defs. Mem. Supp. Mot. Dismiss at 17 n.14.) In addition, plaintiff's claim alleging the issuance of an illegal dividend is also based on Bermudian law. (*Id*. at 17.) We acknowledge that "the need to apply foreign law is 'relevant' to the forum non conveniens analysis." *Varnelo v. Eastwind Transport, Ltd.*, No. 02 Civ. 2084, 2003 WL 230741, at *27 (S.D.N.Y. Feb. 3, 2003). However, it is also widely-recognized that "'the need to apply foreign law is not in itself a reason to apply the doctrine of forum non conveniens,' and we

must guard against an excessive reluctance to undertake the task of deciding foreign law, a chore federal courts must often perform." *Manu Int'l, S.A. v. Avon Prods., Inc.*, 641 F.2d 62, 67-68 (2d Cir. 1981) (quotations and citations omitted); *see also Piper Aircraft*, 454 U.S. at 260 n.29 (noting that "the need to apply foreign law . . . alone is not sufficient to warrant dismissal"); *Nat'l Union Fire Ins.*, 2003 WL 21180421, at *10 ("Because federal courts must often apply foreign law, and the means of pleading and proving foreign law are provided in the Federal Rules of Civil Procedure, interpreting the contracts according to [foreign] law, and instructing a jury on that law if this case should go to trial, are not burdens heavy enough to weight the balance of convenience strongly in favor of dismissing the action."); *Andros Compania Maritima S.A. v. Intertanker Ltd.*, 714 F. Supp. 669, 678 (S.D.N.Y. 1989) ("While it is possible that Bermuda law will apply to the merits of the action, it is well settled that this is not a determinative factor.").  Although we conclude that the fourth and fifth public interest factors weigh in favor of dismissal, this does not necessarily mean that dismissal of the action is required.

### 3.      Whether Dismissal on *Forum Non Conveniens* Grounds is Appropriate

In summary, we found Bermuda to be an adequate alternative forum and that the private interest factors weigh nominally in favor plaintiff, while the public interest factors were either neutral or weighed slightly in favor of dismissal.  However, we must also take into account plaintiff's choice of forum and apply the necessary standard of deference to this choice.  As we explained earlier, the Second Circuit has instructed that

> the degree of deference assigned to plaintiff's choice depends on the specific facts of the case and may be viewed as operating along a "sliding scale[.]" "The more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by

28

reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice. . . . [T]he greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States the more difficult it will be for the defendant to gain dismissal for *forum non conveniens*."

*Pollux*, 329 F.3d at 71 (quoting *Iragorri*, 274 F.3d at 71-72). "Absent proof that plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons, factors relating to convenience or expense generally weigh heavily in favor of the plaintiff's choice." *Pollux*, 329 F.3d at 71. Additionally, the Second Circuit has noted that courts must be wary of the fact that "defendants as much as plaintiffs may be concerned with litigation tactics or forum shopping rather than convenience, and may move for dismissal under *forum non conveniens* to further those goals." *Gross*, 386 F.3d at 233; *see also Iragorri*, 274 F.3d at 75 (noting that district courts should "arm themselves with an appropriate degree of skepticism in assessing whether the defendant has demonstrated genuine inconvenience and a clear preferability of the foreign forum").

Consequently, we conclude that the D&O defendants have not met their burden of establishing that the convenience of the parties and the ends of justice would be best served by dismissing the action. We acknowledge that this litigation will impose burdens on all parties regardless of whether it is located in New York or Bermuda. However, the D&O defendants have failed to demonstrate that the *Gilbert* factors weigh strongly in favor of dismissal, even without according deference to plaintiff's choice of forum. In addition, as discussed in our previous opinion in this case, litigating this matter in the same court as the Flag Securities Litigation will reduce the potential for inconsistent adjudications and allow for more efficient, non-duplicative discovery than

would be possible if the two litigations were allowed to proceed in separate fora.[11]  *See Rahl*, 316

B.R. at 136 (citing *NYCERS v. Ebbers (In re WorldCom, Inc. Sec. Litig.)*, 239 B.R. 308, 333

(S.D.N.Y. 2003)).  Accordingly, the D&O defendants' motion to dismiss based on *forum non conveniens* is denied.


      **B.**    **Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(6) and 9(b)**

      The D&O defendants also contend that the Complaint is "fatally defective" and that the

action should be dismissed pursuant to FED. R. CIV. P. 9(b) and 12(b)(6), for failure to plead fraud

with particularity and failure to state a claim upon which relief may be granted.


           **1.**    **Failure to Plead with Particularity**

      The D&O defendants maintain that plaintiff failed to plead the breach of fiduciary duty

claims, which they contend were based on allegations of fraud, with particularity as required by FED.

R. CIV. P. 9(b).  (D&O Defs. Mem. Supp. Mot. Dismiss at 22.)  Plaintiff, however, contends that:

(1) the breach of fiduciary duty claims are not based on fraud and, therefore, need not be pled with

particularity; and (2) even if the allegations are based on fraud, they have been pled with sufficient

particularity.  (Pl. Mem. Opp. D&O Mot. Dismiss at 28.)

      It is undisputed that claims based on allegations of fraud trigger the heightened pleading

---

[11] Although our previous opinion in this matter denied a motion to remand, the same
principles apply in our denial of the present motion to dismiss on *forum non conveniens* grounds
in that the interests of convenience and justice are met by litigating the related actions in the
same forum, especially where no private or public interests weigh heavily in favor of dismissal.

standard of Rule 9(b). FED. R. CIV. P. 9(b) ("In all averments of fraud, or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."). However, the heightened pleading standard is applicable to breach of fiduciary claims only when the breach is premised on a defendant's fraudulent conduct. *See, e.g., Official Comm. of Unsecured Creditors v. Donaldson, Lufkin & Jenrette Sec. Corp.*, No. 00 Civ. 8688, 2002 WL 362794, at *8 (S.D.N.Y. Mar. 6, 2002) (holding that general pleading standards set out by Rule 8(a), rather than heightened pleading standards of Rule 9(b), apply to breach of fiduciary duty claims where defendant's conduct may be found to have breached its fiduciary duty "by conduct not amounting to fraud, such as breaching its duties of care, disclosure and loyalty"); *Strougo ex rel. Brazil Fund v. Scudder, Stevens & Clark, Inc.*, 964 F. Supp. 783, 804 (S.D.N.Y. 1997), *rev'd in part on other grounds sub nom. Strougo v. Bassini*, 282 F.3d 162 (2d Cir. 2002) (holding heightened pleading standard of Rule 9(b) inapplicable to a breach of fiduciary duty claim not premised on fraud); *In re Luxottica Group S.p.A., Sec. Litig.*, 293 F. Supp. 2d 224, 238 (E.D.N.Y. 2003) (holding that Rule 9(b) does not apply where a plaintiff alleges that defendants breached their fiduciary duties but does not allege fraud). In addition, we note that FED. R. CIV. P. 9(b) "is a special pleading requirement and contrary to the general approach of simplified pleading adopted by the federal rules, its scope of application should be construed narrowly and not extended to other legal theories or defenses." *Strougo*, 964 F. Supp. at 804 (quoting *United States v. Rivieccio*, 661 F. Supp. 281, 289 (E.D.N.Y. 1987) (quoting 5 C. WRIGHT & A. MILLER, *Federal Practice and Procedure* § 1297)).

In the present action, Count I alleges that the D&O defendants breached their fiduciary duties by deepening Flag's insolvency to enhance their personal wealth and Count III alleges that they caused Flag to enter into certain transactions under terms that were unfavorable to Flag. Thus, in

Counts I and III, plaintiff alleges that the D&O defendants breached their "fiduciary obligations to act in the best interests of the Company and its shareholders, not that they have attempted to induce action or inaction on the part of the investors by means of falsehoods or material omissions." *Strougo*, 964 F. Supp. at 804-05. Counts I and III involve actions taken by the D&O defendants "in direct breach of their fiduciary duties to the Company that injured the Company, not misrepresentations or omissions made in at attempt to induce action by a third party." (Pl. Mem. Opp. D&O Defs. Mot. Dismiss at 29.) These Counts are not premised on fraud and contain no allegations that amount to fraudulent conduct on the part of the D&O defendants. Accordingly, plaintiff is obligated to comply only with the notice pleading standard of FED. R. CIV. P. 8(a), which plaintiff has done.[12]

However, Count II of the Complaint, in which plaintiff alleges that the D&O defendants issued false financial statements, sounds in fraud. Even plaintiff notes that "Count II is premised on the D&O Defendants 'misrepresenting and concealing FLAG's true financial condition' through the filing of false financial statements." (Pl. Mem. Opp. D&O Defs. Mot. Dismiss at 31 (quoting Complt. ¶ 268).) By allegedly issuing false financial statements, the D&O defendants were attempting "to induce action or inaction on the part of the investors by means of falsehoods or

---

[12] The D&O defendants maintain that under Bermudian law, a claim for breach of fiduciary duty must be pled with particularity, an assertion which is not denied by plaintiff. (D&O Defs. Reply Mem. Supp. Mot. Dismiss at 15 (citing Diel Decl. ¶ 16).) According to the D&O defendants, under the Companies Act "pleadings must contain sufficient detail of the primary facts, in order to state a claim for breach of fiduciary duty against directors or officers so that such directors or officers can have knowledge of the details of the claims asserted against them. . . . [C]onclusory facts are insufficient." (Diel Decl. ¶ 16 (citing *Intercontinental Nat'l Res. Ltd. v. Dill*, Bermuda Civ. App. No. 14 of 1981, July 5, 1982).) Nevertheless, we conclude that Counts I and III were pled with sufficient particularity in that the allegations contain sufficient factual detail to put defendants on notice of the claims asserted against them and the grounds upon which they are based.

material omissions;" thus, Count II is premised on fraudulent conduct on the part of the D&O defendants. *See Strougo*, 964 F. Supp. at 804-05. Accordingly, the heightened pleading standard of Rule 9(b) is triggered with respect to Count II.

In pleading a claim based on fraud, Rule 9(b) requires that all "circumstances constituting fraud" to be "stated with particularity." FED. R. CIV. P. 9(b). This requirement is satisfied if the pleading adequately specifies: (1) the statements alleged to be false or misleading; (2) the respect in which the statements are false or misleading; (3) the speaker of the allegedly false or misleading statements; and (4) when and where the statements were made. *See Koehler v. Bank of Bermuda (New York) Ltd.*, 209 F.3d 130, 136 (2d Cir. 2000). In addition, "[w]here multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987). Three important goals are served by this rule: (1) defendants are provided with adequate notice of the claims against them; (2) defendants' reputations and goodwill are protected from unfounded allegations; and (3) the filing of strike suits is deterred. *See id.*

The D&O defendants maintain that the allegations of Count II were not pled with sufficient particularity to meet the heightened pleading standard of Rule 9(b) and, in particular, contend that "[t]he Complaint lacks any allegations of fraudulent intent on the part of the D&O Defendants as a group, let alone each defendant individually." (D&O Defs. Reply Mem. Supp. Mot. Dismiss at 15.)

Plaintiff maintains that Count II was pled with sufficient particularity to meet the heightened pleading standard of Rule 9(b) and notes that "[p]laintiff, in 27 separate paragraphs, has detailed how, from 1995 through 2001, the D&O Defendants 'purposefully engaged in improper accounting and other practices that violated GAAP in order to inflate revenue and operating income as well as

pro forma disclosures of cash revenue and EBITDA.'" (Pl. Mem. Opp. D&O Defs. Mot. Dismiss at 31-32 (citing Complt. ¶¶ 205-231).) Specifically, the Complaint alleges that the D&O defendants knowingly

> front loaded revenue; perpetrated sham reciprocal transactions; manipulated pro forma cash revenues; misled investors by overstating EBITDA; distorted cash flow from operations; understated the cost of sales; misrepresented the financial drain of price guarantees; failed to write off bad debts; deferred losses on maintenance contracts; sold capacity to bankrupt companies; recorded operating expenses and interest costs as assets; and overstated impaired assets.

(Pl. Mem. Opp. D&O Defs. Mot. Dismiss at 31-32 (citing Complt. ¶¶ 207-225).) In addition, plaintiff maintains that the Complaint explicitly sets forth the following specific financial disclosures that were misleading as a result:

> ¶ 207: "FLAG's revenue and operating income as well as pro forma disclosures of cash revenue and EBITDA"; ¶ 210 "FLAG essentially boosted its revenue 25 times"; ¶ 213: "FLAG recognized revenue based on an artificially inflated fair market value of network capacity"; ¶ 214 "Disclosing the so-called Cash Revenue served only to mislead investors;" ¶ 215: "'EBITDA' and 'Adjusted EBITDA' were used improperly"; ¶ 217: FLAG distorted the amount disclosed as "Cash Flow From Operations"; ¶ 218: FLAG understated "Cost of Sales"; ¶ 219: "Recording tax assets was yet another attempt by FLAG to overstate assets"; ¶ 221: "FLAG overstated its reported net income"; ¶ 225: "the nature and the amount of the loss should have been disclosed"; ¶ 228: "FLAG artificially inflated its net income and revenue"; ¶ 229-231: FLAG improperly capitalized indirect expenses and interest costs.

(Pl. Mem. Opp. D&O Defs. Mot. Dismiss at 31-32.)

"Although Rule 9(b) requires that allegations of fraud be plead with specificity, it also provides that '[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally.' In accordance therewith, the Second Circuit has held that 'allegations may be based on information and belief when the facts are peculiarly within the opposing party's knowledge.'" *Faulkner v. Verizon Communications, Inc.*, 156 F. Supp. 2d 384, 393 (S.D.N.Y. 2001) (Conner, J.)

(quoting *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990)); *see also Degulis v. LXR Biotechnology, Inc.*, 928 F. Supp. 1301, 1311 (S.D.N.Y. 1996) (noting that "in cases of corporate fraud, the requirements of Rule 9(b) are relaxed as to matters particularly within the opposing party's knowledge," especially where "discovery has not yet commenced").  This does not mean plaintiff may state a claim based upon mere speculation and conclusory allegations; rather, "'[w]here pleading is permitted on information and belief, a complaint must adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed standard.'" *Id.*  "The requirement of a strong inference is satisfied if the plaintiff alleges facts either that 'show that defendants had both motive and opportunity to commit fraud' or that 'constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" *Faulkner*, 156 F. Supp. 2d at 393 (quoting *Rothman v. Gregor*, 220 F.3d 81, 90 (2d Cir. 2000); *Stevelman v. Alias Research, Inc.*, 174 F.3d 79, 84 (2d Cir. 1999)).  In addition, to meet the requirement of Rule 9(b) "a plaintiff need not plead dates, times and places with absolute precision, so long as the complaint 'gives fair and reasonable notice to the defendants of the claim and the grounds upon which it is based.'" *Int'l Motor Sports Group, Inc. v. Gordon*, No. 98 Civ. 5611, 1999 WL 619633, at *3 (S.D.N.Y. Aug. 16, 1999) (quoting *Spear, Leeds & Kellog v. Public Serv. Co.*, 700 F. Supp. 791, 793 (S.D.N.Y. 1998)).

In the case at bar, plaintiff has sufficiently alleged, upon information and belief, many facts concerning the D&O defendants' alleged filing of false financial statements in breach of their fiduciary duties.  Plaintiff has pointed to a number of specific facts and the basis for those facts, from which a strong inference can be drawn that the false statements were made and that such statements were knowingly false.  The facts pled by plaintiff are detailed and specific and thus sufficient to support the allegations surrounding the alleged filing of false financial statements.  Furthermore, the

allegations provided demonstrate that the D&O defendants had both motive and opportunity to commit fraud by way of filing false financial statements. In particular, the Complaint states that the D&O defendants,

> by reason of their positions within FLAG overseeing the day-to-day management . . . , and their stock ownership, held and exercised sufficient power and influence to cause FLAG to engage in the conduct complained of . . . [and] were motivated to cause, aid and abet, or otherwise participate in the misconduct alleged herein because, among other reasons, they owned considerable equity stakes . . . and were thereby interested in creating and maintaining the appearance of FLAG's success in spite of the reality of its failure.

(Complt. ¶¶ 40-41.)

In addition, plaintiff is permitted to rely on the group pleading doctrine and, thus, need not identify the individual authors of the allegedly false financial statements. The group pleading doctrine, an exception to the requirement that fraudulent acts of each defendant be identified separately in the complaint, "allows plaintiff[] to rely on a presumption that statements in prospectuses, registration statements, annual reports, press releases, or other *group-published information*, are the collective work of those individuals with direct involvement in the everyday business of the company." *Elliott Assocs., L.P. v. Hayes*, 141 F. Supp. 2d 344, 354 (S.D.N.Y. 2000) (citing *In re Oxford Health Plans, Inc*., 187 F.R.D. 133, 142 (S.D.N.Y. 1999) (internal quotation marks and citation omitted, emphasis added)); *see also In re Livent Inc. Sec. Litig*., 78 F. Supp. 2d 194, 219 (S.D.N.Y. 1999) (concluding that the group pleading doctrine permits a plaintiff "to allege that misstatements contained in company documents may be presumed to be the work of the company's officers and directors"). "Where the defendants are insiders, no specific connection between them and the fraudulent representations is necessary." *Elliott*, 141 F. Supp. 2d at 354 (citing *DiVittorio*, 822 F.2d at 1242). Thus, where defendants are "'a narrowly defined group of highly

ranked officers or directors who participated in the preparation and dissemination of a [published company document], plaintiffs are not expected to bear the burden of having to identify the role of each defendant in the fraud without the benefit of any discovery.'" *Elliott*, 141 F. Supp. 2d at 354 (quoting *Degulis*, 928 F. Supp. at 1311-12).

Accordingly, we conclude that plaintiff has pled Count II with the particularity required by Rule 9(b), and we deny the D&O defendants' motion to dismiss pursuant to Fed. R. Civ. P. 9(b).

## 2. Failure to State a Claim Upon Which Relief May Be Granted

### a. Count I - Deepening Insolvency

The D&O defendants contend that to state a claim for breach of fiduciary duty for deepening insolvency under Bermuda law, plaintiff must allege that: "(1) Flag was insolvent at the relevant time (which the Complaint here alleges to be February 2000), (2) the D&O Defendants knew that Flag was insolvent at that time, and (3) the D&O Defendants knew that Flag's financial situation had no reasonable prospect for improvement." (D&O Defs. Mem. Supp. Motion Dismiss at 25.) Plaintiff maintains that all three elements have been sufficiently alleged.[13] (*Id.* at 33.)

"'Deepening insolvency' refers to the 'fraudulent prolongation of a corporation's life beyond insolvency,' resulting in damage to the corporation caused by increased debt." *In re Global Serv. Group, LLC*, 316 B.R. 451, 456 (Bankr. S.D.N.Y. 2004) (quoting *Schacht v. Brown*, 711 F.2d 1343, 1350 (7th Cir. 1983), *cert. denied*, 464 U.S. 1002 (1983). "Prolonging an insolvent corporation's

---

[13] Additionally, plaintiff points out that a claim for deepening insolvency in breach of fiduciary duties is also cognizable under New York law. (Pl. Mem. Opp. D&O Defs. Mot. Dismiss at 33 n.14.)

life, without more, will not result in liability . . . . [O]ne seeking to recover for 'deepening insolvency' must show that the defendant prolonged the company's life in breach of a separate duty, or committed an actionable tort that contributed to the continued operation of a corporation and its increased debt." *In re Global Serv.*, 316 B.R. at 458 (citations omitted).

The D&O defendants maintain that Flag was not insolvent in February 2000 and that "[t]he Complaint's insolvency claim is nothing more than an argument that Flag's assets–including the FA-1 and FEA cables–were impaired as of February 2000, and that, if Flag had taken an impairment charge at that time, Flag would have been insolvent." (D&O Defs. Mem. Supp. Mot. Dismiss at 30.) According to the D&O defendants, "[t]hat conclusion is . . . based on layers and layers of incorrect assumptions and conclusions far too attenuated to form the basis of a claim." (*Id*. at 30-31 (citing *In re Livent, Inc. Noteholders Secs. Litig.*, 151 F. Supp. 2d 371, 405-06 (S.D.N.Y. 2001) ("in Rule 12(b)(6) motion practice, 'the standard to govern the sufficiency of the complaint presumes 'well-pleaded' allegations, and it is only those pleadings the courts are charged to deem true . . . a court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice.'" (citing cases))).) Plaintiff maintains that Flag's insolvency in early 2000 was adequately pled and that the D&O defendants' argument that plaintiff "failed to plead facts sufficient to support the claim that FLAG was insolvent in February 2000, amounts to no more than an attempt by Defendants to prove contradictory evidence, improperly turning their motion to dismiss into a motion for summary judgment." (Pl. Mem. Opp. D&O Defs. Mot. Dismiss at 35.) We agree with plaintiff.

On a motion to dismiss, we must accept all well-pleaded facts as true. *See Scheuer*, 416 U.S.

at 236. As stated earlier, a claim should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitled him to relief." *Padavan*, 82 F.3d at 26. Consequently, the issue is not whether plaintiff can ultimately prove that Flag was insolvent during the relevant period. Rather, the appropriate inquiry is whether Flag is entitled to offer evidence in support of that allegation. Although conclusory allegations that fail to give notice of the basic events and circumstances are insufficient as matter of law, that is not the case here. Plaintiff has alleged facts supporting the claim that the D&O defendants deepened Flag's insolvency to enhance their own personal wealth sufficiently to survive a motion to dismiss. Plaintiff alleges that by 1999 capacity prices were falling far more quickly than anticipated due to greater competition and supply, (Complt. ¶ 72), and specifically notes that "in the brief span of February 1999 through April 2000, capacity prices fell by more than 90%." (*Id*. ¶ 73.) In addition, plaintiff alleges that "[b]y February 2000, just 5% of capacity on the twelve segments of the FEA cable system had been sold or committed." (*Id*. ¶ 76.) The Complaint further alleges that "[t]he massive decline in capacity prices in the second half of 1999 and early 2000, combined with FLAG's inability to sell its capacity, meant that the realizable value of FLAG's fiber-optic cable systems also had collapsed. . . . [T]he world price decline and its inability to sell that capacity demonstrates that by March 2000, its capacity available for sale and total value were far less than the claimed amount. Inasmuch as FLAG's balance sheet acknowledges that Limited had liabilities of $1.04 billion, FLAG's assets were far less than its liabilities." (*Id*. ¶ 77.) These allegations are sufficient to state a claim for deepening insolvency. Accordingly, the D&O defendants' motion to dismiss Count I is denied.[14]

---

[14] Additionally, we note that whether the D&O defendants knew of Flag's insolvency and whether they acted in good faith should not be considered at the motion to dismiss stage, so long as plaintiff has adequately alleged those facts, which plaintiff has done. Plaintiff has sufficiently

**b.**     **Count II - Causing Flag to File False Financial Statements**

The D&O defendants maintain that Count II, which alleges that the D&O defendants caused Flag to file false financial statements, should be dismissed on the basis that: (1) "Flag has no standing to sue for its own purportedly false financial statements and, therefore, could not have assigned those claims to Rahl. Any injury resulting from these purportedly incorrect financial statements was suffered not by Flag, but by its shareholders"; (2) Flag suffered no injury as a result of the allegedly false financial statements; and (3) Flag cannot recover for its own wrongdoing. (D&O Defs. Mem. Supp. Mot. Dismiss at 34-35.) We agree with the D&O defendants that Flag suffered no real injury as a result of the allegedly false financial statements and, accordingly, dismiss Count II.

Plaintiff has provided no allegations evincing how Flag was damaged by the alleged false financial statements other than conclusorily asserting that "[a]s a proximate result of the D&O Defendants' . . . breaches of their fiduciary duties, Flag has been damaged in an amount to be proven at trial." (Complt. ¶ 269.) A conclusory allegation such as this is clearly insufficient to support a claim for damages. We agree with the D&O defendants that "when the Complaint recites what happened as a result of the alleged false statements, it repeatedly describes the harm with reference to 'investors' (i.e., shareholders), not Flag itself." (D&O Defs. Mem. Supp. Mot. Dismiss at 35.) If anything, the false financial statements prolonged the life of Flag, and plaintiff has not alleged any causal connection between the filing of false financial statements and the ultimate failure of the

---

alleged facts concerning the various D&O defendants' knowledge and resulting actions concerning Flag's insolvency to survive a motion to dismiss. *Cf. N.F.L. Ins. Ltd. v. B & B Holdings, Inc.*, 874 F. Supp. 606, 615 (S.D.N.Y. 1995) (finding that the issues of when the defendant directors knew of insolvency and whether they acted in good faith at all times are issues of fact that cannot be decided at the summary judgment stage).

company. The only discernible injury to Flag caused by the false financial statements is potential exposure to liability, but there is no longer any such exposure. All claims against Flag by its shareholders and creditors have already been discharged; therefore, there is no potential liability to Flag as a result of the false financial statements. Consequently, the D&O defendants' motion to dismiss Count II is granted.

### c.    Count III - Causing Flag to Enter Into Unfavorable Transactions

In Count III of the Complaint, plaintiff alleges that the D&O defendants "breached their fiduciary duty by executing the GTS Buyout (as defined in ¶ 166) in October 2000 and by selling to Verizon capacity on KPNQwest's Euroring network that FLAG obtained when it entered into a swap transaction with KPNQwest in February 2002." (Pl. Mem. Opp. D&O Defs. Mot. Dismiss at 44 (citing Complt. ¶¶ 271-79, 165-72, 180-89).) Plaintiff maintains that the D&O defendants violated their duty of loyalty with respect to the GTS transaction because Flag "conveyed $175 million in value to GTS for an asset of little, if any value." (Complt. ¶ 275.) According to plaintiff, the GTS transaction "disproportionately benefitted GTS at the expense of FLAG." (*Id*.) In addition, plaintiff alleges that the KPNQwest transaction was a fraudulent conveyance because Flag sold the capacity it had acquired to Verizon at a cost below what Flag had paid, and then Verizon allegedly sold some of that purchased capacity back to Flag at a value twice what it had paid Flag for that capacity. (*Id*. ¶ 276.)

The D&O defendants contend Count III should be dismissed because: (1) plaintiff did not adequately plead insolvency; and (2) plaintiff's argument that the transactions were unwise business decisions is a post hoc argument because at the time of the transactions there was no reason to question their validity. (D&O Defs. Mem. Supp. Mot. Dismiss at 36.) The D&O defendants further

maintain that "[w]ith respect to the KPNQwest transaction, Rahl does not even manage to allege any actual loss to Flag at all." (*Id.*) In addition, the D&O defendants assert that with respect to both allegedly unfavorable transactions, plaintiff fails to provide a reason as to how these transactions benefitted the D&O defendants or why the officers or directors would engage in the transactions "other than in accordance with the exercise of their best business judgment," particularly where several D&O defendants owned shares of Flag and "any waste of corporate assets would erode the value of their investment as well." (*Id.* at 37.)

First, with respect to the D&O defendants' contention that plaintiff did not adequately plead insolvency, we disagree for the reasons stated above. Plaintiff adequately alleges that Flag was insolvent by February 2000 by alleging that its liabilities exceeded its assets. (Complt. ¶ 273.) In addition, the Complaint is replete with factual allegations that support plaintiff's contention that Flag's liabilities exceeded its assets. Because this is a motion to dismiss, we must accept all well-pleaded facts as true; thus, for purposes of the present motion, we assume Flag was insolvent by February 2000.

However, we conclude that plaintiff has not stated a cognizable claim with respect to these two transactions. To state a claim for breach of fiduciary duty under Bermudian law, plaintiff must plead a violation of Section 97 of the Companies Act which requires plaintiff to demonstrate that defendants either: (1) failed to "act honestly and in good faith with a view to the best interests of the company" or (2) failed to "exercise the care, diligence and skill that a reasonably prudent person would exercise in comparable circumstances." (Diel Decl. ¶ 21, Ex. A § 97.) Although we find that plaintiff has adequately alleged that the D&O defendants "failed to act honestly and in good faith

with a view to the best interests of the company"[15] to the extent of surviving the present motion to dismiss, we conclude that plaintiff has not alleged sufficient facts as to how Flag was harmed by these allegedly unfavorable transactions.

With respect to the GTS transaction, we agree with the D&O defendants that plaintiff's own allegations defeat his claim. Plaintiff maintains that the GTS transaction was "an unwise business decision" because the $175 million purchase price Flag paid in this transaction "translates into a per STM-1 price of $454,545." (Pl. Mem. Opp. D&O Mot. Dismiss at 45.) However, on the same page plaintiff asserts that in December 2000, a capacity price of $800,000 per New York-London STM-1 was the prevailing rate. (*Id.*) Thus, by plaintiff's own account, Flag obtained a favorable price and the GTS transaction cannot be a basis for a breach of fiduciary duty or fraudulent conveyance claim.

Plaintiff's claim based on the KPNQwest transaction does not fare any better. Plaintiff alleges that Flag obtained capacity on KPNQwest's Euroring network in a "swap transaction" in which Flag swapped capacity on its FA-1 cable system for the Euroring capacity. (Pl. Mem. Opp. D&O Defs. Mot. Dismiss at 46.) Plaintiff maintains that Flag then "sold its unneeded Euroring capacity to Verizon for a fraction of its market value." (*Id.*) However, plaintiff contends that during this time there was little demand for capacity and, in fact, the market had a "supply glut." (Complt. ¶ 76.) Thus, the fact that Flag was able to turn around and resell the capacity it obtained during the "swap transaction" to Verizon for cash, negates the contention that Flag was harmed by this transaction. Although plaintiff specifically alleges that Flag's "loss as a result of these transactions equaled $57.3 million," this assertion is not entirely accurate. (Pl. Mem. Opp. D&O Defs. Mot.

---

[15] We note that the Complaint as a whole sets forth allegations sufficient to support the contention that the D&O defendants failed to "act honestly and in good faith with a view to the best interests of the company."

Dismiss at 46.) Plaintiff maintains that Flag's loss equals $57.3 million on the basis that Flag resold the dark fiber on the Euroring network to Verizon for $2 per meter, but the prevailing market price was three to five times higher, approximately between $6 and $9.50. (*Id.*) Nevertheless, by plaintiff's own admission, there was little demand for capacity on any of the cable systems. Therefore, the fact that Flag was able to swap capacity on one of its own networks for capacity on the Euroring network which it was then able to resell to Verizon for cash, cannot be deemed an unfavorable transaction which contributed to the demise of Flag. Rather, it is likely that this transaction helped prolong the life of Flag by contributing cash to the corporation.

"[I]n order to establish an actionable waste of assets, it must be demonstrated that no person of ordinary sound business judgment would say that the corporation received fair benefit. If ordinary businessmen might differ on the sufficiency of consideration received by the corporation, the courts will uphold the transaction." *Berman v. Le Beau Inter-America, Inc.*, 62 B.R. 262, 267 (S.D.N.Y. 1986). In the case at bar, it cannot be said that "no person of ordinary sound business judgment" would find that Flag received fair benefit. Flag was able to sell the capacity it obtained on the Euroring to Verizon for cash, and it cannot be said, nor has plaintiff alleged, that Flag would have been able to sell its unused capacity on the FA-1 cable system, which it swapped to KPNQwest for the Euroring capacity, to Verizon or another purchaser. In addition, plaintiff has not alleged that Flag had any potential purchasers who were willing to purchase its acquired capacity on the Euroring network for a price greater than what Verizon paid for it. Therefore, the KPNQwest transaction cannot be a basis for supporting a breach of fiduciary duty or fraudulent conveyance claim.

Because both the GTS and KPNQwest transactions do not support plaintiff's breach of fiduciary duty and fraudulent conveyance claims, the D&O defendants' motion to dismiss Count III

is granted.

### C. Count IX - Claim Against McCormack for Allegedly Issuing an Illegal Dividend

Plaintiff maintains that McCormack caused a Flag subsidiary, Flag Limited ("Limited"), to issue a dividend in violation of § 54 of the Companies Act. Section 54 of the Companies Act provides a cause of action for issuing an illegal dividend or other distribution out of a company's contributed surplus. (Diel Decl. ¶ 28.) "Contributed surplus" is defined as including "proceeds arising from donated shares, credits resulting from the redemption or conversion of shares at less than the amount set up as nominal capital and donations of cash and other assets to the company." (*Id*. ¶ 29.) In order to state a claim under section 54, plaintiff must plead the following:

> (i) the company is, or would after the payment be, unable to pay its liabilities as they become due or that the realizable value of the company's assets would thereby be less than the aggregate of its liabilities and its issued shared capital and share premium accounts; (ii) the director or directors who issued the dividend knew or ought to have known that such circumstances would result from issuing the dividend; and (iii) this was a breach of the director's duties under section 54 of the Companies Act as read in conjunction with section 97 of the Companies Act (setting forth a director's duties).[16]

(D&O Defs. Supp. Mot. Dismiss at 38 (citing Diel Decl. ¶ 30).)

The D&O defendants contend that plaintiff failed to plead that Limited was insolvent at the time the dividend was paid or would have been insolvent after payment of the dividend. (D&O Defs. Supp. Mot. Dismiss at 38.) However, plaintiff did adequately plead Limited's insolvency.

_____

[16] Plaintiff does not contest that these elements must be pled to maintain an action for issuing an illegal dividend. Accordingly, this is the standard that will be applied in the present motion.

Paragraph 174 of the Complaint provides:

> [a]ccording to Limited's 2000 Annual Report, Limited had $518 million of debt . . . . The Annual Report stated that Limited had $1.2 billion of total assets, of which property, plant and equipment (which included capacity available for sale) amounted to $1 billion. . . . [H]owever, because capacity prices had declined globally and sales of capacity on the FEA system in particular had fallen well short of expectation, the true value of the cable system at the end of 2000 was well less than its liabilities. As such, Limited was insolvent when it paid the $30 million dividend to Telecom.

As stated earlier, because this is a motion to dismiss we must accept all well-pleaded facts as true. Thus, for purposes of this motion, Limited is deemed to have been insolvent at the time of the issuance of the dividends because plaintiff adequately pled that it was insolvent.

The D&O defendants argue next that plaintiff failed to allege that McCormack knew of Limited's insolvency. Plaintiff alleges that "McCormack served as a director and officer of Limited at the time of the illegal transaction. As he was responsible for Limited's corporate direction, he is liable for causing Limited to issue the illegal dividend." (Complt. ¶ 325.) In addition, in the opposition papers to the motion to dismiss, plaintiff directs the Court's attention to the fact that the D&O defendants, which includes McCormack, "knew FLAG could not pay" and "breached their duty of care . . . by knowing that FLAG was insolvent." (Pl. Mem. Opp. D&O Defs. Mot. Dismiss at 48 (citing Complt. ¶¶ 170-71).) However, alleging that the D&O defendants knew that Flag was insolvent does not mean that plaintiff adequately alleged that the D&O defendants and, in particular, McCormack, knew that Limited, a subsidiary of Flag, was insolvent. Thus, plaintiff has failed to allege that McCormack knew of Limited's insolvency.

Notwithstanding the fact that plaintiff failed to allege that McCormack knew of Limited's insolvency, plaintiff's claim alleging that McCormack issued an illegal dividend is not dismissed

because the test is whether the director knew or should have known of the insolvency, not just actual knowledge. Plaintiff maintains that "knowledge of FLAG's insolvency is necessarily knowledge of Limited's insolvency since the primary asset of FLAG was Limited's FEA cable capacity;" thus, at the very least McCormack should have known of Limited's insolvency even if he in fact did not. (Pl. Mem. Opp. D&O Defs. Mot. Dismiss at 48.) Whether McCormack should have known is an issue of fact that we do not believe should be resolved on a motion to dismiss. *See N.F.L. Ins.*, 874 F. Supp. at 615. Plaintiff has adequately alleged facts to support the claim that McCormack should have known of Limited's insolvency at the time he issued the illegal dividend. Accordingly, the D&O defendants' motion to dismiss Count IX is denied.

---

### D. Motion to Dismiss With Respect to D&O Defendant Petri

The D&O defendants maintain that Petri should be dismissed from the action because the Complaint contains no allegations against him. (D&O Defs. Mem. Supp. Mot. Dismiss at 40.) In ¶ 31 of the Complaint, plaintiff alleges that Petri "was on the Board of Directors of Limited and acted as the designated shareholder representative for Verizon. He also was the acting Chairman and Chief Executive Officer of Limited until January 12, 1998." Paragraph 38 of the Complaint explicitly states: "The Defendants listed in ¶¶ 30-37 are referred to collectively herein as the 'D&O Defendants.' By reason of their positions as senior officers and directors of FLAG, and their stock ownership, the D&O Defendants owed duties of due care, good faith and loyalty to FLAG." Consequently, Petri was clearly alleged to be a D&O defendant and all allegations made against the D&O defendants have therefore been alleged against him as well. Accordingly, the motion to dismiss D&O defendant Petri is denied.

## CONCLUSION

For all of the foregoing reasons, the motion to dismiss is granted in part and denied in part. The motion of defendants Verizon Communications, Inc. ("Verizon"), Qwest Communications International, Inc. ("Qwest"), and Andersen Worldwide S.C., Arthur Andersen Bermuda and Arthur Andersen & Co. n/k/a Arthur Andersen LLP (collectively "Andersen") to dismiss for lack of standing is granted and all claims against those defendants are dismissed with prejudice.

The motion to dismiss made by defendants Bartlett, Bautista, Giammarino, McCormack, Petri and Riffelmacher (collectively the "D&O defendants") is granted in part and denied in part. The D&O defendants' motion to dismiss on the ground of *forum non conveniens* is denied. The D&O defendants' motion to dismiss Count I and Count IX is denied. Additionally, the D&O defendants' motion to dismiss Petri from the action is denied. However, the D&O defendants' motion to dismiss Count II and Count III is granted without prejudice. Plaintiff may amend the Complaint within fifteen (15) days to add any factual allegations necessary to state a cognizable claim against the D&O defendants.

SO ORDERED.

Dated: White Plains, New York
      July 22, 2005

*William C. Conner*

_____
Sr. United States District Judge